Andrew S. Rawlings (UT-15235)
Christoffer T. Binning (UT-17942)
**HEPWORTH LEGAL**
320 West 500 South, Suite 200
Bountiful, Utah 84010
801.872.2222
arawlings@hepworthlegal.com
cbinning@hepworthlegal.com

*Counsel for Plaintiffs*

---

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, SOUTHERN DIVISION**

| | |
|---|---|
| **KURTIS LEE THOMAS**, an individual, and **BREATHWORK DETOX, INC.**, a Nevada corporation, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> **CANDICE MARIE REBOLLO**, an individual, <br><br> *Defendant.* | **VERIFED COMPLAINT AND JURY DEMAND** <br><br><br> Case No. <br><br> Judge: <br><br> Magistrate: |

Plaintiffs Kurtis Lee Thomas and Breathwork Detox, Inc. ("Plaintiffs"), by and through undersigned counsel, hereby complain against Defendant Candice Marie Rebollo ("Defendant" and/or "Ms. Rebollo") and allege as follows:

**PARTIES**

1.      Plaintiff Kurtis Lee Thomas ("Mr. Thomas") is a resident of St. George, Washington County, Utah.

2.      Plaintiff Breathwork Detox, Inc. ("Breathwork") is a corporation that was incorporated in Nevada, with its principal place of business in St. George, Utah. Kurtis Thomas is the sole owner, CEO, and operator of Breathwork Detox, Inc., which conducts substantial business operations in Utah and pays taxes in Utah. Although the company is incorporated in Nevada, it

operates primarily through virtual and in-person instruction based from Thomas's residence and office in Utah.

3. Upon information and belief, Defendant is a resident of California. Defendant's current residence is unknown, as she has reported to law enforcement that she is "out of the country."

4. As of the date of this filing, Defendant maintains an Instagram account and profile with the user handle @candicerebollo with 1,570 followers. On her Instagram profile page, she claims to be an "entrepreneur," "psychic medium," "business healer," and "founder" of what appears to be a business called "Ancestral Alignments," and she also claims to be engaged in "helping soulprenuers *[sic]* birth offerings" and "exposing false light." **See Exhibit A**, attached hereto.

5. On information and belief, Defendant also maintains other social media accounts and profiles and hosts a podcast, further demonstrating the breadth of her audience.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Complete diversity exists between Plaintiffs and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendant because she purposefully availed herself of the privilege of conducting business activities within Utah; her contacts with Utah are substantially connected to Plaintiffs' claims; and the exercise of jurisdiction over Defendant is reasonable and comports with traditional notions of fair play and substantial justice under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

**FACTUAL ALLEGATIONS**

9.      Mr. Thomas operates a breathwork instruction business through Breathwork Detox, Inc., certifying students to teach breathwork modalities.

10.      In approximately 2021, Defendant enrolled as a student and client in Plaintiffs' program.

11.      Over time, Defendant earned Mr. Thomas's trust and was elevated to a position of responsibility within the organization as an independent contractor.

12.      Defendant was authorized to lead events and sell her own programs to the Breathwork Detox community.

13.      Pursuant to a written agreement between the parties evidenced in email correspondence, Defendant agreed to pay Plaintiffs a percentage of her sales to the Breathwork Detox community in exchange for access to Plaintiffs' client base and promotional support. *See* **Exhibit B**, attached hereto. The agreement provided for a structured payment arrangement whereby Defendant would pay Plaintiffs 50% of the first program sold to a client, 40% of the second program sold to the same client, and 30% of the third and subsequent programs sold to the same client.

14.      The professional relationship ended by mutual agreement in January 2024 after concerns emerged about Defendant's teaching methods, specifically regarding her communications with clients about "demons" and "entities."

15.      Defendant has engaged in a pattern of harassing multiple members within the Breathwork Detox community, spreading false narratives and defamatory statements about not only Plaintiffs but also about other instructors and community members associated with Breathwork Detox, Inc.

16.     Around August 31, 2024, Defendant began publishing false statements about Plaintiffs through various means, including but not limited to social media posts, direct messages to Plaintiffs' clients, and false reports to law enforcement.

17.     On September 1, 2024, Plaintiffs, through counsel, sent Defendant a cease-and-desist letter demanding that she immediately stop publishing false and defamatory statements about Plaintiffs. **See Exhibit C**, attached hereto.

18.     On September 3, 2024, Defendant responded to the cease-and-desist letter, refusing to cease her tortious conduct and instead escalating her defamatory campaign against Plaintiffs. **See Exhibit D**, attached hereto.

19.     On September 5, 2024, Plaintiffs, through counsel, sent Defendant a second cease-and-desist letter. **See Exhibit E**, attached hereto.

20.     Following receipt of the second cease-and-desist letter, Defendant contacted the St. George Police Department in an apparent attempt to weaponize the judicial system against Plaintiffs, making various false allegations that became increasingly extreme over time.

21.     Defendant's false statements include, among others, allegations that Mr. Thomas sexually harassed and assaulted women; committed credit card fraud; engaged in cannibalism and vampirism; and engaged in sex trafficking.

22.     In one particular Instagram post, Defendant published knowingly false claims that Mr. Thomas "infiltrates people's dreams all the time"; that Mr. Thomas claims "he's omnipotent and omnipresent"; that Mr. Thomas "astral projects into people's dreams to spy on them, learn what they're thinking, understand their vulnerabilities and, particularly, to make women obsessed with him." **See Exhibit F**, attached hereto.

23.     In the same Instagram post, Defendant further falsely claimed that Mr. Thomas is "stealing energy because he is possessed" and that he is a "demon" "feeding" on human life force

energy," comparing him to a "narcissistic vampire -- obsessed with constant validation for how 'special' [he is], ... being the center of attention wherever [he goes]." *See id.*

24.     In another Instagram post, Defendant reiterated her false claims that Mr. Thomas is a demon "trying to scam, steal, and outmaneuver everyone he can for the sake of his own power." **See Exhibit G**, attached hereto.

25.     In the same Instagram post, Defendant also acknowledged her success in disseminating her false claims by stating "You are all watching my stories." *See id.*

26.     In yet another Instagram post, Defendant falsely claimed that Mr. Thomas resorts to "darker and more cloaked magic against people." This same post was in response to a question posed from one of Plaintiffs' clients, "How do I get out?", meaning how to terminate their business relationship with Plaintiffs, thus demonstrating the deleterious effects of Defendant's defamatory conduct on Plaintiffs' reputation, business ventures, and finances. **See Exhibit H**, attached hereto.

27.     In late 2024 or early 2025, Defendant published allegations that Mr. Thomas and other agents of Breathwork engaged in sexual harassment, stalking, emotional and financial exploitation, and other misconduct. In this same post, she admitted she contacted law enforcement with her allegations, but law enforcement "failed to act" on her claims, and as a result, she "will not be silenced." She even urged her hundreds of followers to "call St. George Police Department and demand a thorough investigation," essentially encouraging false reports to law enforcement to commence a baseless criminal investigation to further her stated goal of destroying Plaintiffs. **See Exhibit I**, attached hereto.

28.     In yet another Instagram post, Defendant claimed Mr. Thomas was a "psychopath" and explicitly stated her goal is to "run his ass outta *[sic]* the spiritual community." **See Exhibit J** attached hereto.

29.     In another post, Defendant claimed Mr. Thomas was a part of a vast network of "undergrounds criminals and practitioners who commit the fraud, spell casting, & hacking on his behalf." *See* **Exhibit K**, attached hereto.

30.     Defendant also published false claims that Mr. Thomas is a "Satanist manipulator," that he is a part of a "death cult" and "dark brotherhood." *See* **Exhibit L**, attached hereto.

31.     In another Instagram post, Defendant acknowledged the damage her publication of her false and defamatory claims has caused Plaintiffs, stating she "hope[s]" her false allegations are the basis for "so many to people seem to have left the [Breathwork Detox] community." *See* **Exhibit M**, attached hereto.

32.     In yet another Instagram post, Defendant falsely claimed Mr. Thomas regularly engages in credit card fraud and other criminal activity. *See* **Exhibit N**, attached hereto.

33.     Defendant also sent various direct messages to Breathwork Detox clientele and associates, reiterating her various false and defamatory claims about Plaintiffs. *See* **Exhibit O**, attached hereto.

34.     The messages and posts represent only a minute fraction of Defendant's various publications of false and defamatory claims about Plaintiffs.

35.     In addition to written posts and messages, Defendant also posted various video recordings to social media platforms in which she repeated and reiterated her various false and defamatory claims about Plaintiffs.

36.     Defendant has made multiple false allegations of sexual assault against Mr. Thomas, continuing her pattern of defamatory statements designed to destroy his personal and professional reputation.

37.     Despite receiving two cease-and-desist letters, Defendant has continued and escalated her defamatory conduct, even acknowledging her receipt of Plaintiffs' cease-and-desist letters and her

intention to continue publishing her false claims in spite thereof. **See** **Exhibits D** and **J**, attached hereto.

38.     Due to Defendant's persistent harassment and defamatory conduct, Mr. Thomas was forced to seek and was granted a stalking injunction against Defendant in Utah State Court. Despite this court-ordered protection, Defendant has continued her defamatory campaign against Plaintiffs.

39.     Defendant's harassment extends beyond Plaintiffs to other members of the Breathwork Detox community. For instance, Defendant contacted Plaintiffs' Master Teacher, Megan Mercer, attempting to spread false rumors about Mr. Thomas and trying to convince Ms. Mercer to join a lawsuit against Plaintiffs. Ms. Mercer subsequently informed Mr. Thomas of this contact and provided evidence of Defendant's communications.

40.     Defendant's false statements have directly interfered with Plaintiffs' business opportunities. In one specific instance, a potential student named Jordan Siegel, who had booked a consultation call regarding a $4,000 teacher training program, confronted Mr. Thomas about allegations made by Defendant that he had discovered while researching breathwork trainings online. Despite expressing interest in the training program, Mr. Siegel declined to enroll, citing concerns about Defendant's allegations.

41.     As a direct result of Defendant's false allegations, Mr. Thomas's most successful investor relations manager, Bob Coleman, informed Mr. Thomas that he could no longer assist in raising capital for Breathwork Detox. Mr. Coleman had previously helped Mr. Thomas raise $300,000 and was in the process of facilitating an additional $2.5 million in investments before withdrawing due to the reputational concerns stemming from Defendant's false allegations.

42.     As Defendant's defamatory campaign has become increasingly public, more Breathwork Detox community members are withdrawing from Plaintiffs' programs. For example,

community member Annamaria Burns recently terminated her relationship with Plaintiffs after encountering Defendant's false claims.

43.     Defendant appears to be dedicating copious amounts of time and effort to continuing her smear campaign against Plaintiffs. Her defamatory campaign has expanded to target virtually every male who has ever been a speaker, had an affiliation with, or received certification from Breathwork Detox, Inc. Defendant has made her Instagram posts public and continues to regularly publish new defamatory content about Plaintiffs and their associates.

44.     Defendant has solicited members within the Breathwork Detox community, coercing them to leave the company by inciting fear (i.e., Megan Escobar saying 'I know that they're plotting on you next'), as well as convincing people they've been victims of black magic and infested with demons/entities, suggesting they enroll in her program if they wish to have these entities cleared/removed. In a previously dated Instagram video, the defendant admits she has been possessed by a demon entity before, stating 'I know what it's like.' This new business offering clearly indicates the defendant's malicious intentions to not only destroy the place of business and its reputation but also intentionally profit from her defamatory statements.

45.     The examples of defamatory conduct alleged herein are not all-inclusive, and Plaintiffs expressly reserve the right to add, modify, or supplement any allegations pertaining to defamatory conduct as it is discovered. Additional examples of defamatory conduct will be provided throughout discovery and at trial, if trial occurs.

46.     Due to Defendant's false and defamatory statements,

     a.     Several of Plaintiffs' clients canceled their memberships ($95-195/month each);

     b.     Numerous clients and associates have quit/left Plaintiffs' business, including one community manager and three of Plaintiffs' seven main instructors, two

of whom were Plaintiffs' highest grossing clients who each brought approximately $20,000.00 of revenue over a 1-3 year span;

c.      Hundreds of potential clients declined to enroll in training programs ($3,997 for teacher training, with ancillary programs ranging from $2,497 to $12,997), including specifically Mr. Jordan Siegel who cited Defendant's defamatory statements as the reason for not enrolling, resulting in direct financial losses; and

d.      Plaintiffs' business reputations have been severely damaged.

47.     As a direct result of Defendant's defamatory conduct, Mr. Thomas and his family have been forced to relocate from St. George due to damage to his reputation and ability to conduct business locally.

## FIRST CAUSE OF ACTION
DEFAMATION
(*Pursuant to Utah law*)

48.     Plaintiffs incorporate by reference paragraphs 1 through 46 as if fully set forth herein.

49.     Under Utah law, a defamation claim requires proof that: "(1) the defendant published statements concerning the plaintiff that were false; (2) the statements were not subject to privilege; (3) the statements were published with the requisite degree of fault; and (4) the statements resulted in damages."[1]

50.     Defendant published false statements about Plaintiffs through social media posts, direct messages, and communications with law enforcement, as evidenced in **Exhibits F** through **O**. These false statements include multiple false allegations of sexual assault.

51.     The statements were not protected by any recognized privilege.

---

[1] *Jensen v. Sawyers*, 2005 UT 81, ¶ 35.

52.     Defendant knew or should have known her published statements were false, yet published them with actual malice, as evidenced by her stated goal to "run [Plaintiffs] outta *[sic]* the spiritual community."[2] **See Exhibit J**.

53.     Defendant's actions and conduct demonstrate a reckless disregard or indifference to Plaintiffs' rights and safety.

54.     The statements have caused Plaintiffs financial damages in an amount to be proven at trial.

55.     Because Defendant acted with actual malice, Plaintiffs are also entitled to punitive damages in an amount to be proven at trial.[3]

## SECOND CAUSE OF ACTION
DEFAMATION PER SE
*Mr. Thomas Against Defendant*
(*Pursuant to Utah law*)

56.     Plaintiff incorporates by reference paragraphs 1 through 55 as if fully set forth herein.

57.     Under Utah law, defamation per se occurs when a defendant publishes statements that, on their face and without resort to extrinsic evidence, charge criminal conduct, loathsome disease, unchaste behavior, or conduct incompatible with the exercise of a lawful business, trade, profession, or office.[4]

58.     Defendant published numerous false statements accusing Mr. Thomas of criminal conduct, including but not limited to sexual assault and harassment, credit card fraud, sex trafficking, stalking, and operating a criminal enterprise.

59.     These statements constitute defamation per se as they directly impute criminal conduct to Mr. Thomas. **See Exhibits H**, **I**, **K**, and **N**.

---

[2] *Cox v. Hatch*, 761 P.2d 556, 560 (Utah 1988) (discussing actual malice standard).
[3] *See Nash v. Craigco, Inc.*, 585 P.2d 775 (Utah 1978).
[4] *See Jacob v. Bezzant*, 2009 UT 37, ¶ 26.

10

60.    Defendant knew or should have known her published statements were false, yet published them with actual malice, as evidenced by her stated goal to "run [Mr. Thomas] outta *[sic]* the spiritual community."[5] **See Exhibit J**.

61.    Defendant's actions and conduct demonstrate a reckless disregard or indifference to Mr. Thomas's rights and safety.

62.    As defamation per se, Defendant's statements are presumed to have caused damage to Mr. Thomas's reputation, and he is not required to prove special damages.[6]

63.    Mr. Thomas has nevertheless suffered actual damages, including severe emotional distress, loss of business opportunities, and forced relocation from his community.

64.    The statements have caused Mr. Thomas financial damages in an amount to be proven at trial.

65.    Because Defendant acted with actual malice, Mr. Thomas is also entitled to punitive damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
FALSE LIGHT
(*Pursuant to Utah law*)

66.    Plaintiffs incorporate by reference paragraphs 1 through 65 as if fully set forth herein.

67.    Under Utah law, a false light claim requires proof that: "(1) the defendant publicly disclosed information about the plaintiff that placed the plaintiff in a false light; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant knew of or acted in reckless disregard as to the falsity of the publicized matter."[7]

---

[5] *Cox v. Hatch*, 761 P.2d 556, 560 (Utah 1988) (discussing actual malice standard).
[6] *See supra,* Note 4.
[7] *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 907 (Utah 1992).

68.     Defendant's statements about cannibalism, vampirism, pedophilia, sexual predation, and criminal conduct placed Plaintiffs in a false light that would be highly offensive to a reasonable person. *See* **Exhibits F**, **G**, and **L**.

69.     Defendant knew the statements were false or acted with reckless disregard for their truth.

70.     As a result of Defendant's conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
(*Pursuant to Utah law*)

71.     Plaintiffs incorporate by reference paragraphs 1 through 70 as if fully set forth herein.

72.     Under Utah law, tortious interference requires proof that: (1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations; (2) by improper means; (3) causing injury to the plaintiff.[8]

73.     Defendant intentionally interfered with Plaintiffs' existing and potential business relationships by directly soliciting clients to terminate their business relationships with Plaintiffs and spreading false information about Plaintiffs. *See* **Exhibits H** and **M**. This interference includes causing Mr. Thomas's investor relations manager, Bob Coleman, to withdraw from facilitating $2.5 million in investments for Plaintiffs' business.

74.     Defendant's interference was accomplished through improper means, including defamation and false statements.[9]

---

[8] *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 70.
[9] *See St. Benedict's Dev. Co. v. St. Benedict's Hosp*., 811 P.2d 194, 201 (Utah 1991) (holding that systematic efforts to destroy business relationships through false statements constitute improper interference).

75. Defendant's malicious purpose, *i.e.*, to destroy Plaintiffs' business and reputations, was also improper. **See Exhibit J**.

76. As a result of Defendant's conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*Mr. Thomas against Defendant*
(*Pursuant to Utah law*)

77. Plaintiffs incorporate by reference paragraphs 1 through 76 as if fully set forth herein.

78. Under Utah law, a claim for intentional infliction of emotional distress requires proof that: (1) the defendant intentionally engaged in conduct toward the plaintiff that was outrageous and intolerable in that it offended generally accepted standards of decency and morality; (2) the defendant did so with the purpose of inflicting emotional distress or where any reasonable person would have known that such would result; and (3) severe emotional distress resulted."[10]

79. Defendant's conduct, i.e., knowingly publishing false allegations of depraved criminal conduct, including pedophilia and sexual predation, to a broad audience shared by Plaintiffs; contacting known associates and potential clients of Plaintiffs to disseminate her false allegations; and, after Plaintiffs sent two cease-and-desist letters, contacting law enforcement in an effort to have Mr. Thomas criminally charged on allegations Defendant knows to be false, is wanton, outrageous and intolerable, as it offends generally accepted standards of decency and morality.[11] **See Exhibits F**, **H**, **I**, **J**. and **N**.

80. Defendant engaged in this conduct with the purpose of inflicting emotional distress on Mr. Thomas, as evidenced by her stated goal to destroy his reputation and business, and her escalating her conduct to making false reports to law enforcement *after* receiving cease-and-desist

---

[10] *See Nassi v. Hatsis*, 2023 UT App 9, ¶ 38 (citing *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 58).
[11] *See Keisel v. Westbrook*, 2023 UT App 163, ¶ 73.

letters, which put her on notice or should have put her on notice of the emotional distress she was causing Mr. Thomas. **See** **Exhibit J**.

81.     As a direct and proximate result of Defendant's conduct, Mr. Thomas has suffered severe emotional distress and damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### BREACH OF CONTRACT
*(Pursuant to Utah law)*

82.     Plaintiffs incorporate by reference paragraphs 1 through 81 as if fully set forth herein.

83.     Under Utah law, a breach of contract claim requires proof of: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[12]

84.     Defendant entered into an enforceable agreement with Plaintiffs whereby she agreed to pay Plaintiffs a percentage of programs sold to the Breathwork Detox community in exchange for access to Plaintiffs' client base and promotional support. **See** **Exhibit B**.

85.     The agreement, evidenced in email correspondence, established a payment structure of 50% to Plaintiffs for the first program sold to a client, 40% for the second program sold to the same client, and 30% for the third and subsequent programs sold to the same client. *See id.*

86.     Plaintiffs performed all obligations under the agreement by providing Defendant access to their client base and promoting her programs to the Breathwork Detox community.

87.     Defendant breached the agreement by failing to pay Plaintiffs the agreed-upon percentage of her sales to the Breathwork Detox community after January 2024.

88.     As a result of Defendant's breach, Plaintiffs have suffered damages in an amount to be proven at trial.

---

[12] *America West Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15.

**SEVENTH CAUSE OF ACTION**
PERMANENT INJUNCTION
(*Pursuant to Utah and Federal law*)

89.     Plaintiffs incorporate by reference paragraphs 1 through 88 as if fully set forth herein.

90.     Under Utah law, a permanent injunction requires proof that: "(1) the plaintiff will suffer irreparable harm unless the order or injunction issues; (2) the threatened injury to the plaintiff outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined; (3) the order or injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of prevailing on the merits of the underlying claim."[13]

91.     Utah courts have not directly addressed the issue of permanent injunctive relief in the context of defamation, but persuasive authority from other jurisdictions supports the availability of injunctive relief in defamation cases:

        a.     In *Wagner Equipment Co. v. Wood*, the United States District Court for the District of New Mexico held that an injunction prohibiting the repetition of statements determined to be defamatory by a jury does not constitute a prohibited prior restraint on speech under the First Amendment. The court emphasized that once speech has been judicially determined to be defamatory, it is unprotected, and thus, an injunction against repeating such speech is permissible.[14]

        b.     In *Allstate Insurance Company v. Cruz*, the United States District Court for the District of Colorado noted that courts distinguish between pre-trial preventive relief and post-trial remedies. The court stated that post-trial injunctions to

---

[13] *Hunsaker v. Kersh*, 1999 UT 106, ¶ 8.
[14] *See Wagner Equipment Co. v. Wood*, 893 F.Supp.2d 1157 (D.N.M. 2012).

prevent the repetition of statements judicially determined to be defamatory are permissible and do not constitute a prohibited prior restraint on speech.[15]

c.   In *Lothschuetz v. Carpenter*, the U.S. Court of Appeals for the Sixth Circuit) held that an injunction is proper to prevent repetition of statements found to be defamatory after a full trial on the merits.[16]

92.   Defamation is not protected speech under the Utah or United States constitutions, and therefore, an injunction preventing Defendant from furthering disseminating defamatory claims about Plaintiffs does not constitute a "prior restraint" or other violation of free speech.

93.   Plaintiffs will suffer irreparable harm to their business and reputation unless Defendant is enjoined from making further false statements.

94.   The threatened injury to Plaintiffs far outweighs any burden on Defendant from being enjoined from making false statements.

95.   An injunction against false and defamatory statements would serve the public interest by preventing the spread of misinformation.

96.   As detailed above, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their underlying claims.

97.   The necessity of injunctive relief is further demonstrated by the fact that Mr. Thomas was forced to seek and was granted a stalking injunction against Defendant in Utah State Court, yet Defendant has continued her defamatory conduct.

98.   Accordingly, Plaintiffs are entitled to the entry of a permanent injunction enjoining Defendant from further publishing any of her false and defamatory claims about Plaintiffs.

---

[15] *See Allstate Insurance Company v. Cruz*, 733 F.Supp.3d 1098 (D. Colo. 2024).
[16] *See Lothschuetz v. Carpenter*, 898 F.2d 1200 (6th Cir. 1990).

## DEMAND FOR JURY TRIAL

99.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A.    Compensatory damages in an amount to be proven at trial, but in excess of $75,000;

B.    Punitive damages as appropriate;

C.    A permanent injunction enjoining Defendant from:

   1.    Making any false or defamatory statements about Plaintiffs;

   2.    Contacting Plaintiffs' current or prospective clients; and

   3.    Interfering with Plaintiffs' business relationships;

D.    Costs and attorney fees as allowed by law;

E.    Pre-judgment and post-judgment interest as allowed by law; and

F.    Such other relief as the Court deems just and proper.

DATED | April 15, 2025.                    HEPWORTH LEGAL

                                           /s/ Andrew S. Rawlings
                                           ANDREW S. RAWLINGS, Esq.
                                           CHRISTOFFER T. BINNING, Esq.
                                           Counsel for Plaintiffs

17

## PLAINTIFFS' VERIFICATIONS

VERIFICATION | I, *Kurtis Lee Thomas*, do hereby declare and state under penalty of perjury that I am over eighteen years of age; that I am a party in the above-named action; that I have personal knowledge of the facts in this case; that I have carefully read the foregoing document; and that the facts alleged therein are true and correct, except for those matters alleged on information and belief, which I verily believe to be true based on information that I deem reliable.

DATED | April 15, 2025, Bountiful, Utah.

*/s/ Kurtis L. Thomas*[17]
KURTIS L. THOMAS
Plaintiff

VERIFICATION | I, *Kurtis Lee Thomas*, on behalf of *Breathwork Detox,* LLC, do hereby declare and state under penalty of perjury that I am over eighteen years of age; that my company, *Breathwork Detox, LLC*, and I are parties in the above-named action; that I am an authorized agent of *Breathwork Detox,* LLC; that I have personal knowledge of the facts in this case; that I have carefully read the foregoing document; and that the facts alleged therein are true and correct, except for those matters alleged on information and belief, which I verily believe to be true based on information that I deem reliable.

DATED | April 15, 2025, Bountiful, Utah.

*/s/ Kurtis L. Thomas*[18]
BREATHWORK DETOX, LLC
Plaintiff

---

[17] Digital signature affixed on Mr. Kurtis' behalf, with his consent, by counsel of record.
[18] Digital signature affixed on Mr. Kurtis' behalf, with his consent, by counsel of record.